# EXHIBIT B

**GT** GreenbergTraurig

Andrew S.M. Tsui
Tel 202.331.3172
Fax 202.331.3101
Andrew.Tsui@gtlaw.com

February 27, 2023

Qlarant Integrity Solutions, LLC
UPICW Rebuttal and Suspension Department
28464 Marlboro Avenue
Easton, MD 21601-2732
Attn: Donna Knobloch
Email: Adminactions_upicw@qlarant.com

**_BY EMAIL AND OVERNIGHT DELIVERY_**

Re:    Consolidated Rebuttal Statement of Modern Vascular of Glendale, LLC in Opposition to
       Notice of Suspension of Medicare Payments (PTAN: Z205118, NPI: 1063947638; PSP
       Number: PSP-230208-00004); Modern Vascular of Mesa, LLC (Medicare ID Z202457,
       NPI 1427583087, PSP 230208-00007); and Modern Vascular Institute, LLC (Medicare
       ID 885872, NPI 1184279804, PSP 230111-00007)

Dear Ms. Knobloch:

We represent Modern Vascular of Glendale, LLC, Modern Vascular of Mesa, LLC, and Modern
Vascular Institute, LLC ("Modern Vascular"), which has appointed us as its legal representatives
in this matter.[1]  (Ex. A, Authorization for Representation.) By letter dated February 10, 2023,
Qlarant Integrity Solutions, LLC ("Qlarant", UPIC W) informed Modern Vascular that the Centers
for Medicare & Medicaid Services ("CMS") decided to suspend Modern Vascular's Medicare

---

[1] In the interests of administrative simplicity, we respectfully request that Qlarant accept this Consolidated Rebuttal
Statement of Modern Vascular to incorporate by reference a Rebuttal Statement for all current and/or forthcoming
Notices of Payment Suspensions issued to Modern Vascular, LLC, or any of its affiliates, that relate to the same
allegations described in the February 10 Notice of Payment Suspension for Modern Vascular of Glendale, LLC. In
addition to the Glendale clinic, they are: Modern Vascular of Mesa, LLC (Medicare ID Z202457, NPI 1427583087,
PSP 230208-00007) (Ex. D); and Modern Vascular Institute, LLC (Medicare ID 885872, NPI 1184279804, PSP
230111-00007) (Ex. E).  We also have reason to believe that suspensions have been effectuated for clinics in Tuscon,
and Sun City, AZ, but we have not received Notices of Suspension for these locations but would seek for this Rebuttal
Statement to similarly apply to those clinics as well. To the extent Qlarant requires the submission of individually-
tailored Rebuttal Statements, we request that Qlarant notify us immediately so that we may submit those individually-
tailored Rebuttal Statements in a timely manner.

Greenberg Traurig, LLP | Attorneys at Law

Albany. Amsterdam. Atlanta. Austin. Berlin¬. Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London.ˣ Long Island. Los Angeles.
Mexico Cityˣ. Miami. Milan». Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento.
Salt Lake City. San Diego. San Francisco. Seoulᵃ. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Avivˣ. Tokyoˣ. Warsaw¬. Washington, D.C. West Palm Beach. Westchester County.

February 27, 2023
Page 2

payments, effective February 9, 2023, "based on credible allegations of fraud." (Ex. B, "Notice of Payment Suspension" or "Notice"). More specifically, the Notice identifies allegations revealed in the course of a law enforcement investigation and a civil False Claims Act case concerning "information that you misrepresented services billed to the Medicare program," and that "Yury Gampel and Modern Vascular Corporate designed and implemented a fraud scheme at Modern Vascular at the expense of patients and federal payors."

Please accept this timely rebuttal statement on behalf of Modern Vascular.[2] For the reasons set forth in greater detail below, the payment suspension violates CMS's procedural requirements under the federal regulations, and good cause exists to withdraw the payment suspension at the risk of eliminating beneficiary access to life and limb-saving treatment modalities. We therefore respectfully request that Qlarant and CMS immediately reinstate Modern Vascular's Medicare billing privileges retroactively to February 9, 2023.

### 1. The Payment Suspension Violates CMS's Procedural Requirements under 42 C.F.R. § 405.372.

42 C.F.R. § 405.371(c), titled "steps necessary for suspension of payment, offset or recoupment," states that for a payment suspension under § 405.371(a)(2), "CMS or the Medicare contractor suspends payments only after it has complied with the procedural requirements set forth at § 405.372." In turn, 42 C.F.R. § 405.372(a)(4) sets forth the procedures for a "suspected fraud" suspension, and reiterates the above procedures:

> (4) *Fraud.* If the intended suspension of payment involves credible allegations of fraud under § 405.371(a)(2), CMS -
>
> (i) In consultation with OIG and, as appropriate, the Department of Justice, determines whether to impose the suspension and if prior notice is appropriate;
>
> (ii) Directs the Medicare contractor as to the timing and content of the notification to the provider or supplier; and
>
> (iii) Is the real party in interest and is responsible for the decision.

CMS, via its UPIC contractor Qlarant, has seemingly imposed this payment suspension without satisfying the express requirements of CMS's own regulations. To explain, Modern Vascular has been cooperating with the HHS Office of Inspector General ("OIG") and the U.S. Department of Justice, Civil Division ("DOJ") for more than two years regarding the underlying investigation and False Claims Act complaint(s). To date, the parties have been actively working in good faith toward settlement and resolution of the current complaint. On February 13, 2023, Jared Wiesner, the lead attorney for DOJ in the False Claims Act, indicated that he was aware of CMS's proposed

---

[2] On February 24, 2023, our office received a letter from Qlarant sent via Federal Express indicating that on February 15, 2023 Qlarant "received [an] email correspondence letter regarding the suspension of Modern Vascular, LLC; particularly, its affiliates[,]" and that [Qlarant is] reviewing the rebuttal statement and material submitted therein." Ex. C. To be clear, the February 15, 2023 email was sent to George Mills at CMS, not Qlarant, requesting an urgent meeting regarding the Notice of Payment Suspension issued to Modern Vascular of Glendale, and is/was not our formal rebuttal statement.

February 27, 2023
Page 3

suspension, but that DOJ played no role in CMS's independent decision to suspend payments. Throughout the parties' good faith settlement negotiations, DOJ has continued to state that it has no desire to "kill the company." And as recently as February 23, 2023, Mr. Wiesner stated in an email, "[a]s you are all aware, the Modern Vascular entities that are named as defendants in the United States' complaint-in-intervention have been submitting information and documents to assist the government's financial analysts in determining whether and on what terms the United States might agree to settle with the Modern Vascular companies based on their ability to pay." This payment suspension is out of order, and this Notice indicates suggests CMS did not actually consult with DOJ and/or OIG regarding the payment suspension, as required by regulation.

**2. Good Cause Exists to Withdraw the Payment Suspension.**

Under Medicare regulations, a payment suspension applied under 42 C.F.R. § 405.371(a)(2) expressly states that "in cases of suspected fraud," CMS or a Medicare contractor may suspend Medicare payments only "if CMS or the Medicare contractor has consulted with the OIG, and, as appropriate, the Department of Justice, and determined that a credible allegation of fraud exists against a provider or supplier, *unless there is good cause not to suspend payments.*" 42 C.F.R. § 405.371(a)(2) (emphasis added). CMS may determine that good cause exists not to suspend payments to an individual or entity against which there are credible allegations of fraud if:

    (i)    OIG or other law enforcement agency has specifically requested that a payment suspension not be imposed because such a payment suspension may compromise or jeopardize an investigation;

    (ii)    It is determined that beneficiary access to items or services would be so jeopardized by a payment suspension in whole or part as to cause a danger to life or health;

    (iii)    It is determined that other available remedies implemented by CMS or a Medicare contractor more effectively or quickly protect Medicare funds than would implementing a payment suspension; or

    (iv)    CMS determines that a payment suspension or a continuation of a payment suspension is not in the best interests of the Medicare program.

42 C.F.R. § 405.571(b)(1). For the following reasons, we believe CMS can and should determine that good cause exists remove the payment suspension at this time.

**a. DOJ Is Unlikely to Support the Payment Suspension If the Suspension Will Jeopardize Ongoing Investigations and Settlement Discussions.**

As noted above, Modern Vascular has no reason to believe that CMS has consulted with DOJ regarding the payment suspension. Considering the risk of disrupting ongoing investigations, settlement discussions, and the exchange of financial documents that continues to the present day, DOJ would most likely object to the payment suspension. Modern Vascular has, and up to the present time, continued to negotiate settlement terms with DOJ to resolve the investigation and

February 27, 2023
Page 4

complaint. Again, as recently as February 23, 2023, DOJ has requested additional information from Modern Vascular in connection with DOJ's consideration of a possible path to settlement, which Modern Vascular is currently compiling.  A payment suspension will make it virtually impossible for Modern Vascular to offer a financial resolution as part of that settlement, as a suspension in payments will cause Modern Vascular to cease operations at its clinics immediately. Moreover, as communicated to DOJ and viewed favorably by DOJ, Modern Vascular has already made significant changes at the corporate level to end even an appearance of any wrongdoing, including, but not limited to: (1) ceasing all distributions to current investors; (2) expressly limiting access to information regarding referral numbers to legal and compliance; and (3) not adding new investors; and (4) halting the opening of new clinics except for those that were underway at the time. Furthermore, Modern Vascular has removed Yury Gampel, the former Chief Executive Officer, from active management responsibilities as yet another risk mitigating strategy to demonstrate the company's desire to maintain compliant operations and without jeopardizing beneficiary access to Modern Vascular's services. Plainly, DOJ has looked favorably upon these changes, and again, has reiterated its intentions to pursue settlement.

Finally, per our firm's ongoing discussions with Mr. Wiesner and other DOJ attorneys we perceive no reason that DOJ would support a suspension of Medicare payments that would risk not only the viability of Modern Vascular, but also the energies the parties have already expended to resolve the underlying investigation. All of that work will be for naught if the payment suspension remains in place, as Modern Vascular will be unable operate the clinic, will be forced cancel all beneficiary appointments, and there will be no funds available to support a financial settlement of the underlying investigation and complaint being handled by OIG and DOJ. Put simply, CMS' suspension of Medicare payments compromises ongoing settlement discussions, which makes no sense at the present time.

### b. The Payment Suspension Will Cause Medicare Beneficiaries to Lose Access to Modern Vascular's Life- and Limb-Saving Procedures.

If the payment suspension is not rescinded, Modern Vascular will be forced to close the clinic immediately. Modern Vascular lacks the financial reserves to weather a payment suspension for even one week, let alone for 180 days or more. Virtually immediately, Modern Vascular would be required to cancel all scheduled procedures and appointments, leaving these patients—a significant portion of whom are Medicare beneficiaries—without access to life or limb-saving treatments.

It bears emphasis here that Modern Vascular specializes in treatment of peripheral arterial disease ("PAD"). This disease afflicts an estimated 8 to 10 million Americans, most of whom are particularly vulnerable due to their poor health (*e.g.*, diabetics), age (the disease is far more prevalent among elderly), and demographic indicators (the PAD-related amputation rate among African Americans is four times higher than among other racial groups).

PAD is a progressive disease, which culminates in a condition called Critical Limb Ischemia (CLI). If this condition is untreated, the lack of blood flow causes tissue in the foot to die and become gangrenous. Recent publications show that a quarter of patients with CLI require limb amputations

February 27, 2023
Page 5

with a year after diagnosis.[3] Moreover, the three-year mortality risk after a PAD-related amputation is 71 percent, which the American Heart Association equates with the same mortality risk of advanced cancer.[4] Because of Modern Vascular's specialized treatment options, an average across clinics of 36.71 percent of all patients seen at the Modern Vascular's facility over the last twelve months exhibited CLI symptoms. Eliminating access to these services for many of these patients will be devastating—the nature of CLI necessitates proper disease management and timely intervention.

Nor are Modern Vascular's services readily available at other Medicare-participating facilities. Countless Medicare beneficiaries have benefited extraordinarily from Modern Vascular's services. The internal ratings maintained by Modern Vascular averaged across the clinics (the Net Promoter Score[5]) is 4.88 out 5), which is further supported by external patient satisfaction scores (*e.g.*, Google score of 4.84 out of 5). Modern Vascular regularly receives positive comments and other glowing testimonials (*e.g.*, "[n]ot only saved my leg but saved my life!").[6] Other patients have said they "saved my left foot" and "gave me new life."[7]

While the majority of other treatment modalities move quickly to limb amputation, Modern Vascular's success is attributable to world-class equipment, which is superior to most other providers. More importantly, Modern Vascular's procedures are less invasive and therefore less risky than other treatment methods. One recent publication demonstrates for the same type of procedures available at Modern Vascular clinics, the rate of developing major complications averages around 5 to 9 percent, depending on the clinical setting. Alternative procedures performed by vascular surgeons (vascular bypass) have average complication rates at 16 to 17 percent.[8] Because Modern Vascular emphasizes continuous personnel training and utilizes world-class equipment for its services, the Modern Vascular clinic average for major complications rate is *below two percent*—a figure that speaks for itself.

The combination of Modern Vascular's innovative approach to PAD and CLI, coupled with its commitment to training and state-of-the-art equipment, are simply rare and generally unavailable at other health care facilities. Forcing Modern Vascular to close its facilities unnecessarily will deprive Medicare beneficiaries of access to life and limb-saving procedures.

### c.   A Payment Suspension Is Not in the Best Interests of the Medicare Program.

---

[3] *See* Craeger et al, *Reducing Nontraumatic Lower-Extremity Amputation by 20% by 2030: Time to Get to Our Feet: A Policy Statement From the American Heart Association* (2021), *available at* https://www.ahajournals.org/doi/10.1161/CIR.0000000000000967.

[4] *Id.*

[5] The Net Promoter Score (NPS) is widely-used measure of customer satisfaction. A highest score is achieved if patient reports that she would absolutely recommend the facility to a friend or family.

[6] *See* https://modernvascular.com/video-tag/testimonial/. Note that some testimonials listed here reflect services provided at other Modern Vascular clinics as well as the clinics addressed herein.

[7] *Id.*

[8] *See* Sanguily III et al., *Reducing Amputation Rates in Critical Limb Ischemia Patients Via a Limb Salvage Program: A Retrospective Analysis.* Vascular Disease Management (2016), *available at* https://www.hmpglobllearningnetwork.com/site/vdm/content/reducing-amputation-rates-critical-limb-ischemia-patients-limb-salvage-program.

February 27, 2023
Page 6

The payment suspension will force Modern Vascular to close the clinic and almost certainly file for bankruptcy due to the financial crisis caused by such a payment suspension. Modern Vascular will therefore lack the means to enter into a financial settlement with DOJ in connection with the underlying investigation and complaint. In other words, this payment suspension by CMS will almost certainly derail active and ongoing settlement negotiations with DOJ. Indeed, Modern Vascular is *presently* compiling additional financial information in response to a specific DOJ request made on February 13, 2023, which Modern Vascular has, and continues to believe, will form the basis of a final settlement agreement in the not-too-distant future. As of February 2023, DOJ and Modern Vascular (and its affiliated clinics and corporate entities named in the complaint) were negotiating the financial terms of a settlement agreement, with a recent DOJ demand amounting to $80 million. The federal government stands to lose the opportunity to recover these funds on behalf of the Medicare Trust if the payment suspension remains in effect. In short, the Medicare program would be better served to allow DOJ and Modern Vascular the ability to at least complete ongoing settlement negotiations, which may result in a higher financial recovery for the Medicare program than the short-term risk mitigation achieved by the payment suspension. That is especially true where the risks that comprise the bases of the complaint have already been significantly mitigated by Modern Vascular.

In closing, Modern Vascular respectfully requests that CMS rescind the payment suspension because (1) CMS did not properly implement the payment suspension by failing to consult with OIG and/or DOJ prior to issuing the Notice; and (2) good cause exists to withdraw the suspension here in consideration of the energies expended by OIG, DOJ and Modern Vascular—spanning more than two years—and in the service of reaching a mutually acceptable settlement agreement. Modern Vascular's ongoing efforts to implement significant changes that mitigate the potential risk of the alleged scheme, as discussed above, should not be minimized, and demonstrate Modern Vascular's good faith efforts to improve their regulatory compliance program and address the government's concerns in the underlying investigation and complaint. Accordingly, we respectfully request that CMS withdraw the payment suspension and find that good cause exists to permit Modern Vascular to continue to treat its Medicare beneficiaries and receive payment for those services while Modern Vascular continues to resolve the underlying investigation with DOJ and OIG.

Sincerely,

Andrew S.M. Tsui
Of Counsel

Cc: George.Mills@cms.hhs.gov

# Exhibit A

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

Form CMS-1696 Approved
OMB No. 0938-0950

## APPOINTMENT OF REPRESENTATIVE

| Name of Party | Medicare Number (beneficiary as party) or National Provider Identifier (provider or supplier as party) |
|---|---|
| Modern Vascular of Glendale, LLC | Z205118 |

### Section 1: Appointment of Representative

**To be completed by the party seeking representation (i.e., the Medicare beneficiary, the provider or the supplier):**

I appoint the individual named in Section 2 to act as my representative in connection with my claim or asserted right under Title XVIII of the Social Security Act (the "Act") and related provisions of Title XI of the Act. I authorize this individual to make any request; to present or to elicit evidence; to obtain appeals information; and to receive any notice in connection with my claim, appeal, grievance or request wholly in my stead. I understand that personal medical information related to my request may be disclosed to the representative indicated below.

| Signature of Party Seeking Representation | Date 2/22/23 |
|---|---|
| Street Address 19790 W. Dixie Hwy Suite 901 | Phone Number (with Area Code) 8184240201 |

| City Aventura | State FL | Zip Code 33160 |
|---|---|---|

| Email Address (optional) mrabinovich@modernvascularmail.com | Fax Number (optional) 8184755252 |
|---|---|

### Section 2: Acceptance of Appointment

**To be completed by the representative:**

I, Andrew Tsui of Greenberg Traurig , hereby accept the above appointment. I certify that I have not been disqualified, suspended, or prohibited from practice before the Department of Health and Human Services (HHS); that I am not, as a current or former employee of the United States, disqualified from acting as the party's representative; and that I recognize that any fee may be subject to review and approval by the Secretary.

I am a / an ___Attorney___

(Professional status or relationship to the party, e.g. attorney, relative, etc.)

| Signature of Representative | Date 2/22/23 |
|---|---|
| Street Address 2101 L Street N.W. | Phone Number (with Area Code) 2023313172 |

| City Washington | State DC | Zip Code 20037 |
|---|---|---|

| Email Address (optional) tsuia@gtlaw.com | Fax Number (optional) |
|---|---|

### Section 3: Waiver of Fee for Representation

**Instructions: This section must be completed if the representative is required to, or chooses to, waive their fee for representation.** (Note that providers or suppliers that are representing a beneficiary and furnished the items or services may not charge a fee for representation and **must** complete this section.)

I waive my right to charge and collect a fee for representing _____ before the Secretary of HHS.

| Signature | Date |
|---|---|

### Section 4: Waiver of Payment for Items or Services at Issue

**Instructions: Providers or suppliers serving as a representative for a beneficiary to whom they provided items or services must complete this section if the appeal involves a question of liability under section 1879(a)(2) of the Act.** (Section 1879(a)(2) generally addresses whether a provider/supplier or beneficiary did not know, or could not reasonably be expected to know, that the items or services at issue would not be covered by Medicare.)

I waive my right to collect payment from the beneficiary for the items or services at issue in this appeal if a determination of liability under §1879(a)(2) of the Act is at issue.

| Signature | Date |
|---|---|

Form CMS-1696 (Rev 09/21)                                                                                                          1

# INSTRUCTIONS AND REGULATION REQUIREMENTS

## Instructions

Name of Party (required): This is the name of the person or entity which has standing to file a claim or appeal (the name of the person who has Medicare, or the name of the provider or supplier).

Medicare Number or National Provider Identifier (required): This must be completed when the person or entity appointing a representative has a Medicare number or National Provider Identifier. If not applicable, fill in, "not applicable".

All fields in Sections 1 and 2 are required unless noted as optional within the field. See the regulation at 42 CFR 405.910.

## Charging of Fees for Representing Beneficiaries before the Secretary of HHS

An attorney, or other representative for a beneficiary, who wishes to charge a fee for services rendered in connection with an appeal before the Secretary of HHS  (i.e., an Administrative Law Judge (ALJ) hearing or attorney adjudicator review by the Office of Medicare Hearings and Appeals (OMHA), Medicare Appeals Council review, or a proceeding before OMHA or the Medicare Appeals Council as a result of a remand from federal district court) is required to obtain approval of the fee in accordance with 42 CFR 405.910(f).

The form, OMHA-118, "Petition to Obtain Approval of a Fee for Representing a Beneficiary" elicits the information required for a fee petition. It should be completed by the representative and filed with the request for ALJ hearing, OMHA review, or request for Medicare Appeals Council review. Approval of a representative's fee is not required if: (1) the appellant being represented is a provider or supplier; (2) the fee is for services rendered in an official capacity such as that of legal guardian, committee, or similar court appointed representative and the court has approved the fee in question; (3) the fee is for representation of a beneficiary in a proceeding in federal district court; or (4) the fee is for representation of a beneficiary in a redetermination or reconsideration. If the representative wishes to waive a fee, he or she may do so. The form, OMHA-118, may be found at: https://www.hhs.gov/sites/default/files/OMHA-118.pdf

## Approval of Fee

The requirement for the approval of fees ensures that a representative will receive fair value for the services performed before HHS on behalf of a beneficiary, and provides the beneficiary with a measure of security that the fees are determined to be reasonable. In approving a requested fee, OMHA or Medicare Appeals Council will consider the nature and type of services rendered, the complexity of the case, the level of skill and competence required in rendition of the services, the amount of time spent on the case, the results achieved, the level of administrative review to which the representative carried the appeal and the amount of the fee requested by the representative.

## Conflict of Interest

Sections 203, 205 and 207 of Title XVIII of the United States Code make it a criminal offense for certain officers, employees and former officers and employees of the United States to render certain services in matters affecting the Government or to aid or assist in the prosecution of claims against the United States. Individuals with a conflict of interest are excluded from being representatives of beneficiaries before HHS.

## Where to Send This Form

Send this form to the same location where you are sending (or have already sent) your: appeal if you are filing an appeal, grievance or complaint if you are filing a grievance or complaint, or an initial determination or decision if you are requesting an initial determination or decision. If additional help is needed, contact 1-800-MEDICARE (1-800-633-4227, TTY users call 1-877-486-2048), or your Medicare plan.

You have the right to get Medicare information in an accessible format, like large print, Braille, or audio. You also have the right to file a complaint if you feel you've been discriminated against. Visit https://www.medicare.gov/about-us/accessibility-nondiscrimination-notice, or call 1-800-MEDICARE (1-800-633-4227) for more information. TTY users can call 1-877-486-2048.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0950. The time required to prepare and distribute this collection is 15 minutes per notice, including the time to select the preprinted form, complete it and deliver it to the beneficiary. If you have comments concerning the accuracy of the time estimates or suggestions for improving this form, please write to CMS, PRA Clearance Officer, 7500 Security Boulevard, Baltimore, Maryland 21244-1850.

# Exhibit B



Unified Program Integrity Contractor
Western Jurisdiction (UPIC W)

Delivery Method: Federal Express

February 10, 2023

Modern Vascular of Glendale, LLC
11851 N. 51st Avenue, Bldg. G
Glendale, Arizona 85304

**Re:** Notice of Suspension of Medicare Payments
**Provider/Supplier Medicare ID Number(s):** Z205118
**Provider/Supplier NPI:** 1063947638
**PSP Number:** PSP-230208-00004

Dear Modern Vascular of Glendale, LLC:

The purpose of this letter is to notify you of our determination to suspend your Medicare payments pursuant to 42 C.F.R. § 405.371(a)(2). The suspension of your Medicare payments took effect on February 9, 2023. Prior notice of this suspension was not provided, because giving prior notice would place additional Medicare funds at risk and hinder the Centers for Medicare & Medicaid Services' (CMS) ability to recover any determined overpayment. See 42 C.F.R. § 405.372(a)(3) and (4).

The CMS through its Central Office made the decision to suspend your Medicare payments. *See* 42 C.F.R. § 405.372(a)(4)(iii). This suspension is based on credible allegations of fraud. CMS regulations define credible allegations of fraud as an allegation from any source including, but not limited to, fraud hotline complaints, claims data mining, patterns identified through audits, civil false claims cases, and law enforcement investigations. *See* 42 C.F.R. § 405.370(a). Allegations are considered to be credible when they have indicia of reliability. *See* 42 C.F.R. § 405.370. This suspension may last until resolution of the investigation as defined under 42 C.F.R. § 405.370, and may be extended under certain circumstances. *See* 42 C.F.R. § 405.372(d)(3).

Specifically, the suspension of your Medicare payments is based on, but not limited to, information that you misrepresented services billed to the Medicare program. More particularly, law enforcement investigation and a civil false claim case has revealed credible allegations that Yury Gampel and Modern Vascular Corporate designed and implemented a fraud scheme at Modern Vascular at the expense of patients and federal payors.

Pursuant to 42 C.F.R. § 405.372(b)(2), you have the right to submit a rebuttal statement in writing to us indicating why you believe the suspension should be removed. If you opt to do so, we request that you submit this rebuttal statement to us within 15 days of receipt of this notice, and you may include with this statement any evidence you believe supports your reasons why the suspension should be removed. If you choose to submit a rebuttal statement, your rebuttal statement and any pertinent evidence should be sent to:

Page **1** of **2**



28464 Marlboro Avenue • Easton, Maryland 21601-2732
866.269.3494 • www.qlarant.com

**Qlarant Integrity Solutions, LLC**
**UPICW Rebuttal and Suspension Department**
**28464 Marlboro Avenue**
**Easton, Maryland 21601-2732**
**Attention: Donna Knobloch**

If you submit a rebuttal statement, we will review that statement (and any supporting documentation) along with other materials associated with the case. Based on a careful review of the information you submit and all other relevant information known to us, we will determine whether the suspension should be removed, or should remain in effect within 15 days of receipt of the complete rebuttal package, consistent with 42 C.F.R. § 405.375. However, the suspension of your Medicare funds will continue while your rebuttal package is being reviewed. *See* 42 C.F.R. § 405.375(a). Thereafter, we will notify you in writing of our determination to continue or remove the suspension and provide specific findings on the conditions upon which the suspension may be continued or removed, as well as an explanatory statement of the determination. *See* 42 C.F.R. § 405.375(b)(2). This determination is not an initial determination and is not appealable. *See* 42 C.F.R. § 405.375(c).

If the suspension is continued, we will review additional evidence during the suspension period to determine whether claims are payable and/or whether an overpayment exists and, if so, the amount of the overpayment. *See* 42 C.F.R. § 405.372(c). We may need to contact you with specific requests for further information. You will be informed of developments and will be promptly notified of any overpayment determination(s). Claims will continue to be processed during the suspension period, and you will be notified about bill/claim determinations, including appeal rights regarding any bills/claims that are denied. The payment suspension also applies to claims in process.

In the event that an overpayment is determined and it is determined that a recoupment of payments under 42 C.F.R. § 405.371(a)(3) should be put into effect, you will receive a separate written notice of the intention to recoup and the reasons. Please be advised that CMS may charge interest on the amount of the overpayment, consistent with 42 C.F.R. § 405.378. In the written notice alerting you to the overpayment, you will be given an opportunity for rebuttal in accordance with 42 C.F.R. § 405.374 from Noridian Healthcare Solutions, CMS' Medicare Administrative Contractor (MAC). When the payment suspension has been removed, any money withheld as a result of the payment suspension shall be applied first to reduce or eliminate any determined overpayment by CMS or the MAC including any interest assessed under 42 C.F.R. § 405.378, and then to reduce any other obligation to CMS or to the U.S. Department of Health and Human Services (HHS) in accordance with 42 C.F.R. § 405.372(e). In the absence of a legal requirement that the excess be paid to another entity, the excess will be released to you.

Should you have any questions regarding the status of the suspension, please direct your inquiry to adminactions_upicw@qlarant.com. Any request to remove the suspension must be submitted through the rebuttal process described above.

Sincerely,

UPIC W Administration

cc: Centers for Medicare & Medicaid Services

# Exhibit C



Unified Program Integrity Contractor
Western Jurisdiction (UPIC W)

Delivery Method: Federal Express

February 23, 2023

Greenberg Trauing, LLP
Attention:  Andrew S.M. Tsui
2101 L Street N.W.
Washington, D.C. 20037

RE:    Medicare Payment Suspension
       Provider/Supplier Medicare ID Numbers: Z204171; Z205118, Z202457, Z226788, Z229833
       Provider NPIs: 1619407442, 1063947638, 1427583087, 1083179378, 1255896544
       PSP Numbers: PSP-230208-00008, 00004, 00007, 00005, 00006

Dear Mr. Andrew Tsui:

On February 15, 2023, we received your email correspondence letter regarding the suspension of Modern Vascular, LLC; particularly, its affiliates, Modern Vascular, Institute, LLC; Modern Vascular of Glendale, LLC; Modern Vascular of Mesa, LLC; Modern Vascular of Sun City, LLC; and Modern Vascular of Tucson, LLC's  Medicare payments, which was implemented on February 9, 2023. We are reviewing the rebuttal statement and materials submitted therein. A final response to the rebuttal will be forthcoming. Please provide an Appointment of Representation (AOR) for further discussion.

If you have any questions, please direct your written response to adminactions_upicw@qlarant.com.

Sincerely,


UPIC W Administration

cc: Centers for Medicare & Medicaid Services



28464 Marlboro Avenue • Easton, Maryland 21601-2732
866.269.3494 • www.qlarant.com

# Exhibit D



Unified Program Integrity Contractor
Western Jurisdiction (UPIC W)

Delivery Method: Federal Express

February 10, 2023

Modern Vascular of Mesa, LLC
535 E. McKellips Rd., Bldg. S
Mesa, AZ  85203-2522

**Re:** Notice of Suspension of Medicare Payments
**Provider/Supplier Medicare ID Number(s):** Z202457
**Provider/Supplier NPI:** 1427583087
**PSP Number:** PSP-230208-00007

Dear Modern Vascular of Mesa, LLC:

The purpose of this letter is to notify you of our determination to suspend your Medicare payments pursuant to 42 C.F.R. § 405.371(a)(2). The suspension of your Medicare payments took effect on February 9, 2023. Prior notice of this suspension was not provided, because giving prior notice would place additional Medicare funds at risk and hinder the Centers for Medicare & Medicaid Services' (CMS) ability to recover any determined overpayment. *See* 42 C.F.R. § 405.372(a)(3) and (4).

The CMS through its Central Office made the decision to suspend your Medicare payments. *See* 42 C.F.R. § 405.372(a)(4)(iii). This suspension is based on credible allegations of fraud. CMS regulations define credible allegations of fraud as an allegation from any source including, but not limited to, fraud hotline complaints, claims data mining, patterns identified through audits, civil false claims cases, and law enforcement investigations.  *See* 42 C.F.R. § 405.370(a). Allegations are considered to be credible when they have indicia of reliability. *See* 42 C.F.R. § 405.370. This suspension may last until resolution of the investigation as defined under 42 C.F.R. § 405.370, and may be extended under certain circumstances. *See* 42 C.F.R. § 405.372(d)(3).

Specifically, the suspension of your Medicare payments is based on, but not limited to, information that you misrepresented services billed to the Medicare program. More particularly, law enforcement investigation and a civil false claim case has revealed credible allegations that Yury Gampel and Modern Vascular Corporate designed and implemented a fraud scheme at Modern Vascular at the expense of patients and federal payors.

Pursuant to 42 C.F.R. § 405.372(b)(2), you have the right to submit a rebuttal statement in writing to us indicating why you believe the suspension should be removed. If you opt to do so, we request that you submit this rebuttal statement to us within 15 days of receipt of this notice, and you may include with this statement any evidence you believe supports your reasons why the suspension should be removed. If you choose to submit a rebuttal statement, your rebuttal statement and any pertinent evidence should be sent to:

Page **1** of 2



**Qlarant Integrity Solutions, LLC**
**UPICW Rebuttal and Suspension Department**
**28464 Marlboro Avenue**
**Easton, Maryland 21601-2732**
**Attention: Donna Knobloch**

If you submit a rebuttal statement, we will review that statement (and any supporting documentation) along with other materials associated with the case. Based on a careful review of the information you submit and all other relevant information known to us, we will determine whether the suspension should be removed, or should remain in effect within 15 days of receipt of the complete rebuttal package, consistent with 42 C.F.R. § 405.375. However, the suspension of your Medicare funds will continue while your rebuttal package is being reviewed. *See 42 C.F.R. § 405.375(a).* Thereafter, we will notify you in writing of our determination to continue or remove the suspension and provide specific findings on the conditions upon which the suspension may be continued or removed, as well as an explanatory statement of the determination. *See 42 C.F.R. § 405.375(b)(2).* This determination is not an initial determination and is not appealable. *See 42 C.F.R. § 405.375(c).*

If the suspension is continued, we will review additional evidence during the suspension period to determine whether claims are payable and/or whether an overpayment exists and, if so, the amount of the overpayment. *See 42 C.F.R. § 405.372(c).* We may need to contact you with specific requests for further information. You will be informed of developments and will be promptly notified of any overpayment determination(s). Claims will continue to be processed during the suspension period, and you will be notified about bill/claim determinations, including appeal rights regarding any bills/claims that are denied. The payment suspension also applies to claims in process.

In the event that an overpayment is determined and it is determined that a recoupment of payments under 42 C.F.R. § 405.371(a)(3) should be put into effect, you will receive a separate written notice of the intention to recoup and the reasons. Please be advised that CMS may charge interest on the amount of the overpayment, consistent with 42 C.F.R. § 405.378. In the written notice alerting you to the overpayment, you will be given an opportunity for rebuttal in accordance with 42 C.F.R. § 405.374 from Noridian Healthcare Solutions, CMS' Medicare Administrative Contractor (MAC). When the payment suspension has been removed, any money withheld as a result of the payment suspension shall be applied first to reduce or eliminate any determined overpayment by CMS or the MAC including any interest assessed under 42 C.F.R. § 405.378, and then to reduce any other obligation to CMS or to the U.S. Department of Health and Human Services (HHS) in accordance with 42 C.F.R. § 405.372(e). In the absence of a legal requirement that the excess be paid to another entity, the excess will be released to you.

Should you have any questions regarding the status of the suspension, please direct your inquiry to adminactions_upicw@qlarant.com. Any request to remove the suspension must be submitted through the rebuttal process described above.

Sincerely,

UPIC W Administration

cc: Centers for Medicare & Medicaid Services

# Exhibit E



Unified Program Integrity Contractor
Western Jurisdiction (UPIC W)

Delivery Method: Federal Express

February 10, 2023

Modern Vascular Institute, LLC
535 E. McKellips Rd., Ste. 111
Mesa, AZ  85203-2525

**Re:** Notice of Suspension of Medicare Payments
**Provider/Supplier Medicare ID Number(s):** Z204171
**Provider/Supplier NPI:** 1619407442
**PSP Number:** PSP-230208-00008

Dear Modern Vascular Institute, LLC:

The purpose of this letter is to notify you of our determination to suspend your Medicare payments pursuant to 42 C.F.R. § 405.371(a)(2). The suspension of your Medicare payments took effect on February 9, 2023. Prior notice of this suspension was not provided, because giving prior notice would place additional Medicare funds at risk and hinder the Centers for Medicare & Medicaid Services' (CMS) ability to recover any determined overpayment. *See* 42 C.F.R. § 405.372(a)(3) and (4).

The CMS through its Central Office made the decision to suspend your Medicare payments. *See* 42 C.F.R. § 405.372(a)(4)(iii). This suspension is based on credible allegations of fraud. CMS regulations define credible allegations of fraud as an allegation from any source including, but not limited to, fraud hotline complaints, claims data mining, patterns identified through audits, civil false claims cases, and law enforcement investigations. *See* 42 C.F.R. § 405.370(a). Allegations are considered to be credible when they have indicia of reliability. *See* 42 C.F.R. § 405.370. This suspension may last until resolution of the investigation as defined under 42 C.F.R. § 405.370, and may be extended under certain circumstances. *See* 42 C.F.R. § 405.372(d)(3).

Specifically, the suspension of your Medicare payments is based on, but not limited to, information that you misrepresented services billed to the Medicare program. More particularly, law enforcement investigation and a civil false claim case has revealed credible allegations that Yury Gampel and Modern Vascular Corporate designed and implemented a fraud scheme at Modern Vascular at the expense of patients and federal payors.

Pursuant to 42 C.F.R. § 405.372(b)(2), you have the right to submit a rebuttal statement in writing to us indicating why you believe the suspension should be removed. If you opt to do so, we request that you submit this rebuttal statement to us within 15 days of receipt of this notice, and you may include with this statement any evidence you believe supports your reasons why the suspension should be removed. If you choose to submit a rebuttal statement, your rebuttal statement and any pertinent evidence should be sent to:



*28464 Marlboro Avenue • Easton, Maryland 21601-2732*
*866.269.3494 • www.qlarant.com*

**Qlarant Integrity Solutions, LLC**
**UPICW Rebuttal and Suspension Department**
**28464 Marlboro Avenue**
**Easton, Maryland 21601-2732**
**Attention: Donna Knobloch**

If you submit a rebuttal statement, we will review that statement (and any supporting documentation) along with other materials associated with the case. Based on a careful review of the information you submit and all other relevant information known to us, we will determine whether the suspension should be removed, or should remain in effect within 15 days of receipt of the complete rebuttal package, consistent with 42 C.F.R. § 405.375. However, the suspension of your Medicare funds will continue while your rebuttal package is being reviewed. *See* 42 C.F.R. § 405.375(a). Thereafter, we will notify you in writing of our determination to continue or remove the suspension and provide specific findings on the conditions upon which the suspension may be continued or removed, as well as an explanatory statement of the determination. *See* 42 C.F.R. § 405.375(b)(2). This determination is not an initial determination and is not appealable. *See* 42 C.F.R. § 405.375(c).

If the suspension is continued, we will review additional evidence during the suspension period to determine whether claims are payable and/or whether an overpayment exists and, if so, the amount of the overpayment. *See* 42 C.F.R. § 405.372(c). We may need to contact you with specific requests for further information. You will be informed of developments and will be promptly notified of any overpayment determination(s). Claims will continue to be processed during the suspension period, and you will be notified about bill/claim determinations, including appeal rights regarding any bills/claims that are denied. The payment suspension also applies to claims in process.

In the event that an overpayment is determined and it is determined that a recoupment of payments under 42 C.F.R. § 405.371(a)(3) should be put into effect, you will receive a separate written notice of the intention to recoup and the reasons. Please be advised that CMS may charge interest on the amount of the overpayment, consistent with 42 C.F.R. § 405.378. In the written notice alerting you to the overpayment, you will be given an opportunity for rebuttal in accordance with 42 C.F.R. § 405.374 from Noridian Healthcare Solutions, CMS' Medicare Administrative Contractor (MAC). When the payment suspension has been removed, any money withheld as a result of the payment suspension shall be applied first to reduce or eliminate any determined overpayment by CMS or the MAC including any interest assessed under 42 C.F.R. § 405.378, and then to reduce any other obligation to CMS or to the U.S. Department of Health and Human Services (HHS) in accordance with 42 C.F.R. § 405.372(e). In the absence of a legal requirement that the excess be paid to another entity, the excess will be released to you.

Should you have any questions regarding the status of the suspension, please direct your inquiry to adminactions_upicw@qlarant.com. Any request to remove the suspension must be submitted through the rebuttal process described above.

Sincerely,

UPIC W Administration

cc: Centers for Medicare & Medicaid Services